IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSE RODOLFO SALMERON OSORTO, *Petitioner*, v. JEFFREY CRAWFORD, *et al.*, *Respondents*. | 1:26-cv-2211-MSN-IDD |

**ORDER**

This matter comes before the Court on Jose Rodolfo Salmeron Osorto's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). Petitioner, a citizen of El Salvador, received a final order of removal in 2021 but was granted withholding of removal. ICE later issued Petitioner an Order of Supervision ("OSUP"). On July 22, 2026, however, ICE officers arrested Petitioner when he appeared for a scheduled check-in. Petitioner contends that his current detention violates 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), that ICE failed to follow its regulations in revoking his OSUP. Petitioner also contends that ICE cannot remove him to a third country without allowing him to raise a credible fear of removal before an Immigration Judge. For the reasons that follow, the Court will grant his Petition.

## I. BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States without inspection sometime before May 2015. ECF 5-1 ¶¶ 5-6. Customs and Border Protection officers encountered Petitioner and placed him in expedited removal proceedings. *Id.* ¶ 6. Petitioner claimed a fear of removal to El Salvador, and he was referred for a credible fear interview. *Id.* ¶¶ 6-7. On July 13, 2015, it was determined that Petitioner had a credible fear of being returned to El Salvador and he was issued a Notice to Appear. *Id.* ¶ 8. On August 19, 2015, an Immigration Judge granted

Petitioner release on bond, and Petitioner posted that bond and was released from custody on August 24, 2015. *Id.* ¶¶ 9-10.

On August 12, 2021, an IJ ordered Petitioner removed to El Salvador but granted him withholding of removal to El Salvador. *Id.* ¶ 11. Neither party appealed. *Id.* The next year, on March 23, 2022, ICE canceled Petitioner's bond and issued him an Order of Supervision ("OSUP"). *Id.* ¶ 12.

On July 22, 2026, Petitioner appeared for a scheduled check-in with DHS. *Id.* ¶ 13. During the visit, DHS officers arrested Petitioner. *Id.* Petitioner was served a notice of removal to Mexico, and he expressed a fear of removal to Mexico. *Id.* Petitioner was also served with a Notice of Revocation of release and was provided an opportunity to respond to the reasons for revocation. *Id.* Petitioner declined to respond. *Id.* Petitioner is awaiting a third country fear screening. *Id.* ¶ 14.

On July 22, 2026, Petitioner filed this Petition seeking his immediate release. ECF 1.

## II. DISCUSSION

Petitioner argues that (1) his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*; (2) ICE failed to follow its regulations in revoking his OSUP; and (3) Petitioner is entitled to review by an IJ of his claim that he has a credible fear of persecution and torture before being removed to a third country. The Court will address each claim in turn.[1]

### A. Petitioner's Continued Detention

[1] Federal Respondents argue that this Court should decline to exercise jurisdiction over the Petition because Petitioner is a member of the non-opt out class in *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). ECF 6 at 16-18. As another court in this District has thoroughly explained, these arguments are meritless. *See Serpas v. Noem*, 1:25-cv-02369-AJT-WBP, ECF 15 at 3-5 (E.D. Va. Feb. 3, 2026); *see also, e.g.*, *Garcia-Rivera v. Noem*, 1:26-cv-00229-MSN-WBP, ECF 6 at 3 n.2 (E.D. Va. Mar. 2, 2026) (concluding same). As of the date of the entry of this Order, final judgment in *D.V.D.* has been stayed. *See D.V.D. v. Dep't of Homeland Sec.*, 1:25-cv-10676, ECF Nos. 242, 246 (D. Mass. Feb. 26, 2026). Moreover, Petitioner's challenge to his ongoing detention and the revocation of his Order of Supervision raise issues that are substantively different from the claims at issue in *D.V.D.*, which largely focus on the procedural due process protections due to noncitizens subjected to third-country removal. *See D.V.D. v. Dep't of Homeland Sec.*, --- F. Supp. 3d. ---, 2026 WL 521557, at *27-40 (D. Mass. Feb. 25, 2026).

Under 8 U.S.C. § 1231, which governs the detention of noncitizens like Petitioner who have received a final order of removal, noncitizens shall be detained during a ninety-day "removal period" following their final order to effectuate their removal. 8 U.S.C. §§ 1231(a)(1)(A), (2)(A). If DHS is unable to effectuate a person's removal within the 90-day deadline, DHS may release them subject to terms of supervision. 8 U.S.C. §§ 1231(a)(3), (6). DHS may later re-detain a person who has been released on an order of supervision if, for instance, there has been a change in circumstances or DHS becomes able to conduct their removal. *See* 8 C.F.R. §§ 241.4(*l*); 241.13(*l*)(2). DHS may also continue to detain a noncitizen past the 90-day removal deadline in certain circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024).

While 8 U.S.C. § 1231(a)(6) does not impose an explicit time limit on the length of a noncitizen's detention following a final removal order, the Supreme Court has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed § 1231 to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to § 1231 may only be for a "period reasonably necessary" to secure the noncitizen's removal." *Id.* at 689. The Supreme Court has explained that detention for a period of up to six months is "presumptively reasonable." *Id.* at 701. After this six-month period, a noncitizen's detention becomes presumptively unlawful if they "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal Respondents contend that because Petitioner has not been detained for six months, his *Zadvydas* claim must fail. ECF 5 at 12-13. But, as courts in this Circuit have recognized,

"*Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable." *Serpas v. Simon*, --- F. Supp. 3d ---, 2026 WL 1244544, at *4 (E.D. Va. Feb. 3, 2026); *see also Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *8 (D. Md. Jan. 9, 2026) (explaining that "*Zadvydas* did not announce a bright line rule that permits detention for at least six months," but instead created a dynamic standard under which "a habeas petitioner's continued detention may become unjustified at a period short of that six-month mark" (citing *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 370 (D. Md. 2025))); *Abrego Garcia v. Noem*, 811 F. Supp. 3d 741, 761 (D. Md. 2025) (stating that the presumptive six-month period "can be rebutted where the petitioner demonstrates that removal is not reasonably foreseeable"); *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025) (collecting cases from outside this Circuit).

Within the six-month period, a petitioner may rebut the presumption that his detention is reasonable through "proof that 'removal is not reasonably foreseeable.'" *Zavvar*, 2025 WL 2592543, at *6 (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. 2025)). Petitioner has supplied such proof here. Despite receiving a final order of removal in 2021, the government has not been able to effectuate Petitioner's removal. *See, e.g.*, *Rojas Toj v. Mullin*, 1:26-cv-1142-MSN-WBP, 2026 WL 1458900, at *3 (E.D. Va. May 21, 2026) (concluding that the government's failure to remove petitioner during the years after his order of removal constituted evidence against the likelihood of removal). Petitioner has also been granted withholding of removal to El Salvador, precluding his removal to the only country of which he is a citizen. *See Ramirez Esquivel v. Perry*, 1:26-cv-966-MSN-IDD, ECF 8 at 5 (E.D. Va. May 5, 2026) (concluding that petitioner's removal was unlikely where he had been granted withholding of removal to Guatemala, his country of origin). Petitioner was also granted employment authorization twice, in 2022 and 2024, suggesting that even the Federal Respondents understood

that Petitioner could not be removed. ECF 1 ¶ 69; *Ciciliano v. Guadian*, No. 1:26-CV-559-MSN-WEF, 2026 WL 1703590, at *3 (E.D. Va. Jun. 11, 2026) (finding employment authorization "a highly relevant admission suggestive of their general inability to remove Petitioner.").

Moreover, while Respondents state that they intend to remove Petitioner to Mexico, it is unclear whether Federal Respondents have obtained travel documents or Mexico's consent for his removal. *See* ECF 5-1 ¶ 15 (Declaration of Deportation Officer stating merely that if the Petition was denied "ICE would be able to immediately transfer Petitioner to Southwest Border facility and present Petitioner to Mexico for acceptance"). Respondents' mere intention to take Petitioner to the Mexican border is simply not sufficient. *Henry Alexander De La Cruz Lopez v. Markwayne Mullin*, No. 1-26-cv-1931, ECF 9 at 7 (E. D. Va. Jul. 28, 2026). It is also unclear whether Respondents will be able to remove Petitioner to Mexico even if they do obtain travel documents. Petitioner has claimed a fear of removal to Mexico. ECF 5-1 ¶ 13. And, in any event, Petitioner is entitled to IJ review of his credible fear claim before his removal can occur. *See Rojas Toj*, 2026 WL 1458900, at *3; *see also infra* at 9 n.3.

Federal Respondent's argument that Petitioner is somehow to blame for their inability to remove him is both unpersuasive and inaccurate. ECF 5 at 14. Petitioner is not required to designate a third country for the Federal Respondents to effectuate his removal. *See* 8 U.S.C. § 1231(b)(2)(A); *Xiao v. Noem*, No. 1:25-CV-2382-MSN-IDD, 2026 WL 1298793, at *4 (E.D. Va. Jan. 30, 2026). And in any event, Respondents failed to rebut Petitioner's facts evidencing Petitioner's efforts to designate a foreign country for removal. *See* ECF 1 ¶¶ 31, 35, 66.

Under these circumstances, Petitioner's removal within any finite period of time is exceedingly unlikely.[2] *See Serpas*, 2026 WL 1244544, at *4 (concluding that petitioner had

---

[2] The Court is mindful that the Fourth Circuit has cautioned against expanding *Zadvydas* "beyond the context of the *indefinite and potentially permanent* detention involved there." *Castaneda*, 95 F.4th at 757 (quoting *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022)). But the circumstances here are far different from those presented in *Castaneda*. In *Castaneda*, the Fourth Circuit held that petitioner had not shown that his detention was indefinite and

demonstrated that his removal was not reasonably foreseeable where he had received CAT withholding and the respondents' plan to remove him to Mexico was "still in nascent stages"); *Zavvar*, 2025 WL 2592543, at *7-8 (ruling that petitioner's removal was not reasonably foreseeable where he had been granted CAT withholding to his country of origin and was entitled to contest his removal to a third-party countries). Because Petitioner faces indefinite detention with no reasonable likelihood of removal, his detention violates due process and he is entitled to release.

**B. Revocation of Petitioner's Order of Supervision**

The Court also concludes that Petitioner is entitled to release based on his claim that ICE failed to follow its regulations in revoking his Order of Supervision.

The Immigration and Nationality Act's regulations create two different types of release following an order of removal. Under 8 C.F.R. § 241.4, "DHS may release a[] [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *2 n.3 (E.D. Va. Mar. 2, 2026) (quoting *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)). Alternatively, DHS may release a noncitizen under 8 C.F.R. § 241.13 "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3 (internal quotation marks omitted).

"The procedures required to revoke each of these forms of release are different." *Phommachak v. Wesling*, 816 F. Supp. 3d 201, 208 (D. Mass. 2026). An order of release under

potentially permanent where he was "detained pending the completion of withholding-only proceedings that he voluntarily initiated" and that, necessarily, would come to a close. *Id.* By contrast, here, Petitioner has received CAT withholding preventing his removal to Guatemala and it is entirely unclear that ICE will be able to remove him to Mexico or any other country.

section 241.4 may be revoked where (1) the purposes of release have been served, (2) an individual violates his conditions of release, (3) it is appropriate to enforce a removal order, or (4) DHS determines that revocation is in the public interest. 8 C.F.R. § 241.4(*l*)(2). By contrast, DHS may only revoke release that was ordered under § 241.13 if it makes "(1) an individualized determination (2) by [DHS] that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.'" *Phommachak*, 816 F. Supp. 3d at 208 (quoting *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)). "When § 241.13(i) governs revocation, the procedures outlined for revocation under § 241.4(1) do not apply." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3.

Here, Respondents purported to revoke Petitioner's OSUP under 8 C.F.R. § 241.4(*l*)(2), on the grounds that the "purposes of [his] release" had been served, and his case was under review for removal to an alternate country. ECF 5-2 at 1. The text of Petitioner's OSUP, however, strongly suggests that Petitioner was ordered released under 8 C.F.R. § 241.13. ECF 5-3. His OSUP states that DHS ordered Petitioner's release on supervision "[b]ecause the agency has not effected [his] deportation or removal during the period prescribed by law[.]" *Id.* at 1. This text matches § 241.13, which states that DHS shall release individuals "who are subject to a final order of removal and are detained . . . after the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of [his] removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). In contrast, to release Petitioner under § 241.4, DHS would have had to conclude that travel documents were not available, Petitioner did not pose a risk to safety or flight, and was not likely to violate the conditions of his release. 8 C.F.R. § 241.4(e). None of these findings appear on the face of Petitioner's OSUP; therefore, the Court concludes that § 241.13—not § 241.4—governs Petitioner's OSUP and the revocation of his

release. *See Herber Baldemar Caal Pop v. Markwayne Mullin*, No. 1:26-cv-1886, ECF 10 at 7-8 (E.D. Va. Jul. 23, 2026).

Applying § 241.13, the Court concludes that Respondents did not properly revoke Petitioner's OSUP. Under § 241.13, it is Respondents who bear the burden to prove that circumstances have changed and that Petitioner's removal has become "significantly likely in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3 (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025)). Respondents have not come close to meeting that burden. There is simply nothing in the record to show that Petitioner's removal is likely beyond a statement of a Deportation Officer that if the Petition were denied, ICE would "transfer Petitioner to Southwest Border facility and present Petitioner to Mexico for acceptance." ECF 5-1 ¶ 15. Respondents' showing is "plainly inadequate to establish a changed circumstance, let alone one that suggests removal has become significantly likely in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Rojas Toj*, 2026 WL 1458900, at *5 (concluding same).

Because Respondents have failed to follow § 241.13 in revoking Petitioner's OSUP and detaining him, and because that regulation was promulgated to protect Petitioner's right to due process, Petitioner's current detention is unlawful, and he is entitled to immediate release. *Garcia-Rivera*, 2026 WL 1244545, at *3; *see also Sokpa-Anku v. Mullin*, 1:26-cv-01504 (AJT/LRV), 2026 WL 1878709, at *3 (E.D. Va. June 29, 2026) ("In habeas cases where ICE revoked an OSUP in contravention of binding regulations, this Court has consistently vacated ICE's revocation of the OSUP and ordered the Petitioner's immediate release from custody.").

## III. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Petition (ECF 1) is GRANTED; it is further

ORDERED that Federal Respondents immediately release Petitioner with all his personal property; it is further

ORDERED that Petitioner's Order of Supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.13; and it is further

ORDERED Respondents and any of Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

August 3, 2026
Alexandria, Virginia